IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LOUISE M. GOULD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  CIVIL ACTION 11-0730-WS-C |
| | ) |
| TRANSAMERICA LIFE INSURANCE | ) |
| COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the motion of the entity defendant ("Transamerica") for summary judgment, (Doc. 49), the plaintiff's motion for partial summary judgment, (Doc. 53), and Transamerica's supplemental motion for summary judgment. (Doc. 96). The parties have filed briefs, evidentiary materials and ancillary documents in support of their respective positions, (Docs. 49-56, 60-61, 72-75, 84, 89, 96, 101, 103), and the motions are ripe for resolution. After careful consideration, the Court concludes that the plaintiff's motion is due to be denied and that Transamerica's motion is due to be granted in part and denied in part.

## BACKGROUND

According to the complaint, (Doc. 1, Exhibit B), the plaintiff in 1992 purchased a long-term care insurance policy ("the Policy") from Transamerica's predecessor. Defendant Robert Farmer, acting as the agent of Transamerica's predecessor, marketed the policy to the plaintiff and made certain representations in connection therewith. The Policy has remained in force ever since. In 2010, the plaintiff was admitted to a facility ("Cedar Hill") for long term care. She made a claim for benefits under the Policy, which Transamerica denied.

The complaint asserts the following causes of action against Transamerica:  (1) breach of contract; (2) bad faith failure to pay benefits; (3) intentional and/or negligent misrepresentation; (4) fraudulent suppression and concealment; (5) negligence; (6) negligent hiring/training/supervision; and (7) unjust enrichment.  (Doc. 1, Exhibit B at 9-12).  Transamerica seeks summary judgment as to each of these claims, while the plaintiff seeks summary judgment only with respect to her breach of contract claim.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden."  *Id*.  "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial."  *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party."  *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); *accord Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence supporting a party's position. Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited.[1]  Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), and the Court accordingly limits its review to those arguments the parties have expressly advanced.

## I. Breach of Contract.

The Policy provides in pertinent part that "[w]e will pay, as a Nursing Home Benefit, the actual charges of a Nursing Home," subject to certain monetary and other limits.  (Doc. 50, Exhibit A1 at 9).  "To receive Nursing Home Benefits … [t]he care or

---

[1] The plaintiff, for example, has submitted

services must be provided in a Nursing Home." (*Id.*).  The Policy defines "Nursing Home" as follows:

> A facility, or that part of one, which:  (1) is operating under a license issued by the appropriate licensing agency; (2) is engaged in providing, in addition to room and board accommodations, nursing care and related services on a continuing inpatient basis to 6 or more individuals; (3) provides, on a formal prearranged basis, a Nurse who is on duty or on call at all times; (4) has a planned program of policies and procedures developed with the advice of, and periodically reviewed by, at least one Physician; and (5) maintains a clinical record of each patient.  ….

(*Id.* at  7).

> Prior approval of Nursing Home care is not required.  However, care received at a nursing facility which is not in full compliance with the definition of a Nursing Home will still meet the requirements of this Policy, but only if Our Personal Care Advisor pre-certifies that the facility substantially complies.

(*Id.* at 9).

If Cedar Hill is a Nursing Home under the Policy, the plaintiff is entitled to benefits and Transamerica is in breach of contract for failing to provide them.  Likewise, if Cedar Hill is not a Nursing Home under the Policy but the requirements of the second quoted provision are satisfied, the plaintiff is entitled to benefits and Transamerica is in breach.  The parties disagree as to whether either provision is satisfied, but they agree that Alabama law governs the construction of the Policy.  (Doc. 49 at 3-4; Doc. 53 at 12, 20 n.11; Doc. 84 at 2).

"The court must enforce the insurance policy as written if the terms are unambiguous …."  *Safeway Insurance Co. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005).  "Whether a provision of an insurance policy is ambiguous is a question of law."  *Id.*  "If a word or phrase is not defined in the policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it."  *Id.*  That is, "[w]hen analyzing an insurance policy, a court gives words used in the policy their common, everyday meaning and interprets them as a reasonable person in the insured's position would have understood them."  *State Farm Mutual Automobile Insurance Co. v. Brown*, 26 So. 3d 1167, 1169 (Ala. 2009).

"A term is ambiguous only if, applying the ordinary meaning, one would conclude that the provision containing the term is reasonably susceptible to two or more constructions."  *Herrera*, 912 So. 2d at 1144 (internal quotes omitted).  "To the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company."  *Id*. at 1143.[2]

With these principles in mind, the Court reviews each element of the Policy definition of a "Nursing Home."

### 1.  License.

Transamerica admits that Cedar Hill is operating under a license as an assisted living facility ("ALF") issued by the appropriate Alabama licensing agency.  (Doc. 49 at 6, 9).  The Policy does not require that the facility be licensed specifically as a nursing home, and Transamerica makes no argument to the contrary.[3]  For all purposes in this lawsuit, the first element of a Nursing Home is satisfied.  Fed. R. Civ. P. 56(g).

### 2.  Nursing care.

---

[2] The plaintiff also invokes the doctrine of "reasonable expectations," but the concept appears to be only another way of saying that ambiguous policy provisions are to be construed against the insurer.  *See Herrera*, 912 So. 2d at 1145; *State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293, 311 (Ala. 1999).

[3] Transamerica expressly limits the elements at issue to the second, fourth and fifth. (Doc. 72 at 3 n.3).  To the uncertain extent Transamerica nevertheless relies on *Michel v. American Family Life Assurance Co*., 481 F. Supp. 2d 887 (N.D. Ohio 2007), to challenge the first element, it is unavailing.  The policy in *Michel* provided coverage only for care in a "skilled or intermediate nursing facility," which had to be " licensed as such."  *Id*. at 888.  The *Michel* Court ruled that "skilled or intermediate nursing facility" included a "nursing home" and that the facility's lack of a license as a nursing home precluded coverage.  *Id*. at 890-91.  But the Policy does not require that Cedar Hill be licensed as a nursing home, only that it be licensed.  Even if a restrictive interpretation requiring licensure as a nursing home were advanced by Transamerica, and even were that a reasonable interpretation of the Policy, the competing interpretation requiring only licensure is also reasonable, and the resulting ambiguity would have to be resolved in favor of the latter construction.

Almost all of the parties' firepower is trained on this element.  There is no dispute that Cedar Hill provides room and board accommodations.  And there is no dispute that Cedar Hill provides all its services to 6 or more individuals.  The question is whether Cedar Hill provides "nursing care … on a continuing inpatient basis."

The parties agree that the undefined term "nursing care" encompasses unskilled nursing care and skilled nursing care.  (Doc. 53 at 15; Doc. 72 at 1; Doc. 75 at 17; Doc. 84 at 2).  Indeed, Transamerica concedes that "[t]he parties agree … that the term 'nursing care' should be defined in the broadest sense."  (Doc. 84 at 2 (internal quotes omitted)).  Since it is agreed that unskilled nursing care is nursing care, Cedar Hill provides "nursing care" under the Policy if it provides unskilled nursing care.[4]  Therefore, the element is satisfied if Cedar Hill provides unskilled nursing care "on a continuing inpatient basis."[5]

Transamerica's primary argument is that Cedar Hill cannot provide nursing care on a "continuing basis" because, as an ALF, governing regulations preclude it from doing so.  (Doc. 49 at 9-10).  The Court cannot agree.

Transamerica cites several regulations,[6] but the only one it actually discusses concerns the responsibility of an ALF confronted with a resident "who requires medical

---

[4] The Policy defines "Nurse" as a person duly licensed as a Registered Nurse ("RN"), a Licensed Practical Nurse ("LPN"), or a Licensed Vocational Nurse ("LVN").  (Doc. 50, Exhibit 1A at 7).  Transamerica concludes that "nursing care" is limited to services that "can only be provided by licensed professional nurses."  (Doc. 49 at 5; Doc. 72 at 1).  The plaintiff appears not to directly address this interpretation, but neither does Transamerica argue that any of the activities at Cedar Hill on which the plaintiff relies fail to meet its construction.  Since it is thus immaterial to resolution of the instant motion, the Court need not and does not evaluate the legitimacy of Transamerica's construction.

[5] To the uncertain extent Transamerica suggests that the Policy requires the facility also to provide skilled nursing care on a continuing inpatient basis, (Doc. 72 at 2), the Court rejects the suggestion.  Without explicit Policy language requiring that the nursing care be skilled, any care that constitutes nursing care necessarily satisfies the Policy definition.  Again, even if Transamerica clearly advanced a contrary position, and even were that a reasonable construction, the plaintiff's construction is also reasonable and therefore must  prevail.

[6] These regulations define an ALF, require an ALF to obtain nursing services when needed, and require an ALF to discharge a resident who requires nursing care beyond the ALF's

or skilled nursing care for an acute condition or exacerbation of a chronic condition which is expected to exceed 90 days." Ala. Admin. Code r. 420-5-4-.06(6)(b). The ALF shall not retain such a resident unless she meets certain thresholds in terms of performing or directing the performance of tasks related to her care. *Id*. Transamerica concludes that, under this provision, nursing care provided by an ALF such as Cedar Hill "is not continuing (uninterrupted) because it has a 90-day time limit." (Doc. 72 at 2).

The fatal problem with Transamerica's position is that it is based on a version of the regulation that does not exist. Transamerica quotes the regulation as applying to a resident "who requires medical or nursing care," (Doc. 49 at 10), but the regulation actually applies only to those who require "medical or *skilled* nursing care."[7] On its face, the regulation imposes no time limit on the provision of unskilled nursing care.[8]

Given that there is no external rule precluding Cedar Hill from meeting the Policy requirement of providing nursing care on a continuing basis, the question becomes whether Cedar Hill in fact does so, and this depends in the first instance on the meaning to be given the adjective, "continuing." Although they agree that the term must be given its common, ordinary meaning, the parties expend little effort identifying that meaning. The plaintiff never presents a definition, and Transamerica waits until its reply brief to do so. Transamerica defines "continuing" as "not temporary or limited in duration," (Doc.

---

capabilities and facilities. Nothing about these regulations remotely restricts an ALF's ability to provide unskilled nursing care on a continuing basis; Transamerica, by merely citing them without discussion, has not shown the contrary.

[7] This is not the only instance of Transamerica dropping the critical qualifier "skilled" from a quotation. Transamerica quotes Cedar Hill's executive director as admitting that Cedar Hill is "not licensed to provide continuous nursing care." (Doc. 49 at 13). What she actually stated was that ALFs "are not licensed to provide continuous *skilled* nursing care." (Doc. 50, Exhibit 21 (emphasis added)).

[8] Even for skilled nursing care, the regulation would appear to permit nursing care for up to 90 consecutive days for the same patient, longer if an exception applies. As noted in text, Transamerica has not effectively offered a definition of "continuing" that would exclude nursing care of this length. Nor has Transamerica established that the duration of "continuing" is to be measured by how long an individual resident receives nursing care rather than by looking to the facility's ongoing, overall provision of nursing care to its residents.

84 at 2), but it offers nothing beyond its ipse dixit in support.  The Court does not find Transamerica's bald opinion adequate, especially as this definition appears to describe "permanent" or "eternal" more closely than it does "continuing."[9]  At any rate, district courts (including this one) ordinarily do not consider arguments raised for the first time on reply.[10]  The Court has been given no reason to depart from this rule, and it declines to do so.[11]

Without a definition of "continuing," the Court cannot evaluate whether the parties' evidence – which is largely conflicting in any event – presents a genuine issue of material fact as to whether Cedar Hill provides nursing care on a continuing basis.

The same can be said for the term "inpatient."  The plaintiff never addresses it, and Transamerica does so in its reply brief – devoting less than a single sentence to the question.  (Doc. 84 at 2-3).  The meaning of the word within the Policy, and whether Cedar Hill satisfies it, thus remain indeterminate.

Transamerica believes that several opinions from other jurisdictions support its position in this case, but they are neither controlling nor persuasive.  An essentially identical definition of "Nursing Home" was involved in *Crutchfield v. Transamerica*

[9] The same is so for Transamerica's apparent equation of "continuing" with "uninterrupted," (Doc 72 at 2), which again is supported by nothing but ipse dixit.

[10] *See Park City Water Authority v. North Fork Apartments, L .P.*, 2009 WL 4898354 at *1 n.2 (S.D. Ala. 2009) (citing cases from over 40 districts applying the rule in 2009 alone).  The Eleventh Circuit follows a similar rule.  *E.g., Herring v. Secretary, Department of Corrections*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we have repeatedly admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotes omitted).  This Court has identified some of the reasons supporting the rule.  "In order to avoid a scenario in which endless sur-reply briefs are filed, or the Court is forced to perform a litigant's research for it on a key legal issue because that party has not had an opportunity to be heard, or a movant is incentivized to save his best arguments for his reply brief so as to secure a tactical advantage based on the nonmovant's lack of opportunity to rebut them, this Court does not consider arguments raised for the first time in a reply brief."  *Hardy v. Jim Walter Homes, Inc.*, 2008 WL 906455 at *8 (S.D. Ala. 2008).

[11] The Court notes the tendency of the parties and their witnesses to substitute "continuous" for "continuing," apparently at random.  The two words are not the same and do not necessarily carry identical denotations.

*Occidental Life Insurance Co.*, 2012 WL 4212354 (W.D. Ky. 2012), but the Court addressed only the fourth element, not the second. *Id*. at *2. The policy definition of "Nursing Home" is not even set forth in *Bellas v. Life Investors Insurance Co.*, 2012 WL 443975 (Nev. 2012),[12] and the Court did not discuss any element of the definition, since the plaintiff conceded the facilities at issue did not meet the definition. *Id*. at *1.

An essentially identical definition of "Nursing Home" was again involved in *McDermott v. Life Investors Insurance Co.*, 2007 WL 3273496 (W.D. Wash. 2007). The Court ruled that the facility could not provide nursing care on a continuing inpatient basis because, under state regulations, the facility could provide only "intermittent care under certain limited circumstances." *Id*. at *4. Unlike in Alabama, however, the governing statute defined the "domiciliary care" the facility was allowed to provide, Wash. Rev. Code § 18.20.300, as limited to "intermittent nursing services." *Id*. § 18.20.020(5). While it may be reasonable to conclude that "intermittent" is not "continuing," the absence of a comparable provision in Alabama law renders *McDermott* irrelevant.

In *Milburn v. Life Investors Insurance Co.*, 511 F.3d 499 (10th Cir. 2008); *Gillogly v. General Electric Capital Assurance Co.*, 430 F.3d 1284 (10th Cir. 2005); *Geary v. Life Investors Insurance Co.*, 508 F. Supp. 2d 518 (N.D. Tex. 2007); and *Gregg v. IDS Life Insurance Co.*, 681 N.Y.S.2d 451 (N.Y. Sup. Ct. 1998), the policy did not have a "continuing basis" requirement, and the Court focused on a different element of the definition of "Nursing Home," which (unlike the Policy) required that the facility be licensed "to engage primarily in providing nursing care and related services to inpatients." The Courts determined that the facilities at issue could not meet the "primarily" standard due to statutory and regulatory limitations in the nursing care they could provide. 511 F.3d at 1290-91; 430 F.3d at 1290-91; 508 F. Supp. 2d at 525; 681

---

[12] Transamerica's assertion that *Bellas* involved "an identical 'Nursing Home' definition," (Doc. 49 at 16; Doc. 84 at 4 n.9), is simply incorrect.

N.Y.S.2d at 898.  But this litigation concerns the meaning of "continuing," not "primarily," so these cases are unhelpful.[13]

The Court offers a word of clarification before leaving this portion of the Policy definition.  Transamerica appears frustrated that Cedar Hill, and ALFs generally, do not comport with modern conceptions of a nursing home or with Alabama regulatory definitions and descriptions of such entities.  Transamerica also appears to believe it can establish the meaning of its Policy merely by offering the affidavit of its representative to say what it means.  (Doc. 50, Exhibit A).  This is not how insurance law works.  The Policy is governed by its actual definition of "Nursing Home," not by some other definition that could have been, but was not, selected, and this is true even though developments in elder care since 1992 (and especially the advent of ALFs) may have rendered quaint or even ill-advised its chosen definition.  Moreover, the meaning of the Policy's actual language is for the Court to evaluate based on the rules set forth above, not Transamerica's opinion.

### 3.  Nurse.

The plaintiff has presented evidence that Cedar Hill provides, on a formal prearranged basis, a Nurse who is on duty or on call at all times.  (Doc. 55, Exhibit 11 at 172-73, 177, 179; *id*., Exhibit 12 at 98, 119; *id*., Exhibit 13 at 9).  Transamerica has cited no evidence in opposition to this showing.  Accordingly, it is uncontroverted, and established for all purposes in this lawsuit, that Cedar Hill satisfies this element of a Nursing Home.  Fed. R. Civ. P. 56(g).

### 4.  Policies and procedures.

---

[13] Transamerica's final case, *Michel v. American Family Life Assurance Co.*, 481 F. Supp. 2d 887 (N.D. Ohio 2007), is inapposite for reasons set forth in note 3, *supra*.

Neither side presents argument as to the meaning of this requirement.  The
plaintiff has submitted evidence that the element is satisfied, and Transamerica has
presented evidence that it is not satisfied.  (Doc. 72 at 3 n.3; Doc. 89 at 2 n.2).  In
particular, Transamerica relies on a questionnaire completed by Cedar Hill's
administrator, which states that Cedar Hill has a planned program of policies and
procedures that are periodically reviewed by a physician but which also states that the
policies and procedures were not developed with the advice of a physician.  (Doc. 50,
Exhibit A.6).  The plaintiff points out that, in the same questionnaire, the administrator
identified a physician who advised in the development of the policies and procedures.
(*Id.*).  The plaintiff also points out that the administrator, in her deposition, testified that
the policies and procedures were developed with the advice of a physician.  (Doc. 55,
Exhibit 11 at 198-99).  What the plaintiff fails to do is explain how the administrator's
inconsistent statements eliminate any genuine issue of fact as to whether Cedar Hill
satisfies this element of a Nursing Home.

### 5.  Clinical records.

Again, the parties present no argument as to the meaning of this requirement but
do offer conflicting evidence as to whether the element is satisfied.  (Doc. 72 at 3 n.3;
Doc. 89 at 2 n.2).  A genuine issue of material fact thus remains as to whether Cedar Hill
satisfies this element of a Nursing Home.

The plaintiff complains that Transamerica's corporate representative testified in
deposition that "[f]our of the five elements have been satisfied …."  (Doc. 53 at 21; Doc.
89 at 2 n.2).  And so she did, (Doc. 55, Exhibit 15 at 16-17),[14] but the plaintiff does not
articulate, much less support, any argument as to how this fact overrides the genuine
issue of material fact disclosed by the record evidence as to elements four and five.

---

[14] Nor was this Transamerica's final indication that it challenges only the second element.
Even after asserting in brief that "discovery has revealed that other elements of the 'Nursing
Home' definition [i.e., elements four and five] also are at issue," (Doc. 72 at 3 n.3),
Transamerica announced that "[c]ontractual liability hinges on whether Cedar Hill can satisfy"
the second element.  (Doc. 84 at 2).

Whatever arguments could have been made, the plaintiff has not made them, and the Court will not construct or support arguments on her behalf.

### 6.  Substantial compliance.

The plaintiff insists that, even if Cedar Hill does not fully meet the Policy definition of a "Nursing Home," coverage should be provided because the facility "substantially complies" with the definition.  (Doc. 75 at 17-18).  Her argument consists of the raw observation that "a majority" of the five elements are satisfied.  As discussed above, only two of the five have been determined to be satisfied, and the plaintiff has presented no authority and no analysis showing how Cedar Hill could possibly "substantially comply" with the Policy definition under such circumstances.[15]

### 7.  Summary.

It is established for all purposes in this litigation that Cedar Hill satisfies the first and third elements of the Policy definition of "Nursing Home."  On the argument, authority and evidence provided, however, genuine issues of material fact remain as to whether Cedar Hill satisfies the second, fourth and fifth elements.  Accordingly, neither the plaintiff nor Transamerica is entitled to summary judgment as to the plaintiff's claim for breach of contract.

## II.  Bad Faith.

The plaintiff asserts both the "normal" and the "abnormal" forms of the tort.

### A.  Normal Bad Faith.

"For a 'normal' bad-faith claim to be submitted to the jury, the underlying contract claim must be so strong that the plaintiff would be entitled to a preverdict judgment as a matter of law."  *Jones v. Alfa Mutual Insurance Co.*, 1 So. 3d 23, 32 (Ala. 2008) (internal

---

[15] It is thus unnecessary to consider the parties' arguments concerning the "nursing facility" requirement and the pre-certification requirement.

quotes omitted).  "Summary judgment is appropriate only when there is no genuine issue as to material fact and … the moving party is entitled to a judgment as a matter of law." *Wilbanks v. United Refractories, Inc.*, ___ So. 3d ___, 2012 WL 5693002 at  *2 (Ala. 2012) (internal quotes omitted).  If the plaintiff would not be entitled to judgment as a matter of law on the contract claim, the insurer is entitled to summary judgment on the normal bad faith claim.  *Nationwide Insurance Co. v. Nilsen*, 745 So. 2d 264, 269 (Ala. 1998).  Since the plaintiff is not entitled to summary judgment on her contract claim, neither could she be entitled to judgment as a matter of law on that claim.  Transamerica is thus entitled to summary judgment as to the plaintiff's normal bad faith claim.

### B.  Abnormal Bad Faith.

"To this date, the abnormal cases have been limited to those instances in which the plaintiff produced substantial evidence showing that the insurer (1) intentionally or recklessly failed to investigate the plaintiff's claim; (2) intentionally or recklessly failed to properly subject the plaintiff's claim to a cognitive evaluation or review; (3) created its own debatable reason for denying the plaintiff's claim; or (4) relied on an ambiguous portion of the policy as a lawful basis to deny the plaintiff's claim."  *State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293, 306-07 (Ala. 1999); *accord Jones*, 1 So. 3d at 32. The plaintiff invokes all four varieties.  (Doc. 75 at 24-25 & 25 n.28).

Transamerica relied on its construction of the second element of the "Nursing Home" definition to deny coverage.[16]  As discussed in Part I, the parties' incomplete presentation leaves open the questions whether the phrase, "nursing care … on a continuing inpatient basis," is ambiguous and whether, if it is, the plaintiff is entitled to benefits under the reasonable construction most favorable to her.  It therefore remains open to the plaintiff to show abnormal bad faith based on the fourth type of abnormal bad faith listed in *Slade*.

---

[16] Transamerica's challenge to the fourth and fifth elements developed only after this lawsuit was filed.  (Doc. 72 at 3 n.3).

Without addressing the ambiguity form of abnormal bad faith or the plaintiff's invocation of it, Transamerica argues that the Court has definitively identified the universe of bad faith allegations in the complaint and that the plaintiff should not be allowed to rely on anything not included in the Court's listing.  (Doc. 103 at 1-2).  The only question then confronting the Court, however, was whether the complaint included a claim of abnormal bad faith at all.  The Court in its discussion of the complaint did not, and did not purport to, limit the plaintiff's abnormal bad faith claim to the specific examples it noted.  (Doc. 93).  At any rate, the Court noted that the complaint "alleg[es] that Transamerica relied on its own interpretation of a policy provision that does not unambiguously support its position," (*id*. at 3), which implicates the reliance-on-ambiguous-provision form of abnormal bad faith.

In a similar vein, Transamerica argues that, even if the Court has not cabined the plaintiff's abnormal bad faith claim, the complaint itself does so.  (Doc. 96 at 16).  But Transamerica has not explained how the complaint excludes abnormal bad faith based on reliance on an ambiguous provision and, as just discussed, the Court has found otherwise.

The parties devote over 70 pages to briefing the abnormal bad faith claim, focusing almost entirely on the other types of abnormal bad faith.  Because this claim survives Transamerica's motion for summary judgment under the fourth type, the Court declines to venture into the morass presented by the parties' voluminous, tangled briefing as to the others.

## III.  Misrepresentation.

Transamerica argues that the only representation by Farmer as to which there is evidence is that he told the plaintiff he was selling her a long-term care policy.  (Doc. 49 at 21).  As Transamerica correctly points out, any such statement by Farmer was exactly true.  The Policy on its face declares that it is a "Long-Term Care Insurance Policy,"

(Doc. 50, Exhibit A1 at 1), and the plaintiff admits the Policy is in fact a long-term care policy.  (Plaintiff's Deposition at 44).[17]

But the plaintiff does have evidence of a representation by Farmer that the Policy "would cover any kind of future long-term care needs that [the plaintiff] had," that it "would cover all future needs."  (Plaintiff's Deposition at 40).[18]  If the Policy does not provide coverage for the plaintiff's stay at Cedar Hill, Farmer's statement would be untrue.  It may therefore furnish the basis of a misrepresentation claim.

Transamerica next argues that the plaintiff's misrepresentation claim is barred by the parol evidence rule and the merger doctrine.  (Doc. 49 at 23).  "[A] merger clause does not bar the admission of parol evidence to prove fraud in the inducement of the contract …." *Wood v. Phillips*, 849 So. 2d 951, 959 (Ala. 2002) (internal quotes omitted).  The plaintiff cited this rule, (Doc. 75 at 28), but Transamerica ignored it in its reply and thus cannot obtain summary judgment on this ground.

As the plaintiff concedes, (Doc. 75 at 28), an element of her fraud claim is reasonable reliance on Farmer's alleged misrepresentation.  *E.g., Heisz v. Galt Industries, Inc.*, 93 So. 3d 918, 925 (Ala. 2012).  "The return to the reasonable-reliance standard imposes again on a plaintiff a general duty to read the documents received in connection with a particular transaction …." *AmerUs Life Insurance Co. v. Smith*, 5 So. 3d 1200, 1208 (Ala. 2008) (internal quotes omitted).  "When reviewing a plaintiff's actions pursuant to the reasonable-reliance standard, this Court has consistently held that a plaintiff who is capable of reading documents, but who does not read them or investigate facts that should provoke inquiry, has not reasonably relied upon a defendant's oral

---

[17] To the uncertain extent the plaintiff suggests that merely calling a policy a long-term care policy somehow constitutes a representation that it covers all possible forms of long-term care in all kinds of facilities, (Doc. 75 at 2, 29), she is mistaken.  One might as well argue that sale of a "homeowner's policy" carries with it a representation that any damage to the home is automatically covered.

[18] The plaintiff cites many deposition pages, (Doc. 75 at 2), but, except as quoted in text, they assert only that Farmer told her she was buying a long-term care policy.

representations that contradict the written terms in the documents." *Id*. Transamerica invokes these principles. (Doc. 49 at 24-25).

As noted, the only misrepresentation identified by the plaintiff is Farmer's statement that the Policy would cover any future long-term care needs the plaintiff had. But, as discussed in Part I, the Policy explicitly limits coverage to care and services received in a "Nursing Home," a defined term that, whatever its precise scope, necessarily places some long-term care outside its boundaries.[19] Thus, whether or not the plaintiff actually read the Policy, she could not reasonably have relied on a representation that she would be covered for any long-term care, wherever received.

The plaintiff objects that the Policy defines "Nursing Home" broadly, so her reliance would have been reasonable even had she read the Policy, because she could not have known that Transamerica would deny coverage for her stay at Cedar Hill. (Doc. 75 at 28). This argument depends upon a recasting of Farmer's alleged misrepresentation from the global (the Policy will cover all your future needs) to the specific (the Policy will cover your stay at Cedar Hill). But the alleged misrepresentation was global, not specific, and the Policy directly contradicts the global misrepresentation, leaving the plaintiff unable to reasonably rely on it.

For want of reasonable reliance, Transamerica is entitled to summary judgment as to the plaintiff's misrepresentation claim.

## IV. Suppression.

According to the complaint, Transamerica suppressed: (1) that the Policy "would be treated and considered by Defendants merely as a 'Nursing Home' only policy"; (2) that the Policy "was not, in fact, a Long Term Care insurance policy that would provide comprehensive coverage and protection for Plaintiff's future long term care needs"; (3) that "long term care benefits are available only if provided in a Nursing Home"; and (4) that Transamerica "would not adhere to the language of Plaintiff's policy and would

---

[19] The plaintiff does not invoke the "substantial compliance" provision in support of her misrepresentation claim, although that provision as well is on its face not limitless.

unilaterally interpret and misconstrue policy language for Transamerica's own benefit." (Doc. 1, Exhibit B at 10).

"If one receives from a defendant documents that put him on notice of the very facts alleged to have been suppressed, then that defendant cannot have suppressed those facts." *Liberty National Life Insurance Co. v. Ingram*, 887 So. 2d 222, 229 (Ala. 2004) (plurality opinion) (internal quotes omitted); *accord Robinson v. JMIC Life Insurance Co.*, 697 So. 2d 461, 462 (Ala. 1997). As Transamerica notes, (Doc. 49 at 26-27), the Policy (which the plaintiff received in 1992) sets forth the limitations on its scope, including that nursing home benefits must be provided in a "Nursing Home" as therein defined, with all the limitations consequent thereto. The plaintiff does not respond to this argument, which effectively resolves against her the claim as to the first three listed suppressions.

The plaintiff's final allegation of suppression goes not to concealment of the terms of the Policy but to Transamerica's intentions concerning its construction of that language. The Policy does not state that Transamerica will deny coverage for care received in an ALF, but Transamerica points out that, in 2001, the plaintiff "asked about Assisted Living Facility (ALF) coverage and [was] informed … that this was not a covered benefit on her policy." (Doc. 51, Exhibit C). But there is a rather large disconnect between confirming that the plaintiff has not purchased ALF coverage and advising that an ALF cannot fall within the Policy definition of a "Nursing Home." Transamerica has not shown that the 2001 statement disclosed the allegedly suppressed information.[20]

Also addressing the fourth alleged suppression, Transamerica calls it "absurd" to suggest it knew in 1992 that it would deny benefits in 2010 and declares that "[t]his is not a proper suppression claim!" (Doc. 49 at 25-26). Conclusions are not argument, and it is not the responsibility of the Court to put flesh on these thin bones.

---

[20] The same is true of the 2001 general notice allegedly sent to policyholders advising that some policies might not have "assisted living facility coverage." (Doc. 51, Exhibit B). Moreover, Transamerica did not actually file Exhibit B (but instead filed only a second copy of Exhibit A), so it is not properly before the Court.

"[C]laims alleging fraudulent suppression are subject to a two-year statute of limitation[, and] the limitations period begins to run when the plaintiff was privy to facts which would provoke inquiry in the mind of a person of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud." *Davant v. United Land Corp.*, 896 So. 2d 475, 491 (Ala. 2004) (internal quotes omitted).  Transamerica argues that the fourth prong of the plaintiff's suppression claim is barred by the statute of limitations because, under the discovery rule, the limitations period began to run in 2001, when she was advised that ALF was not a covered benefit.  (Doc. 49 at 28).

Again, however, advising a policyholder that she has not purchased ALF coverage does not obviously advise her that the insurer takes the position an ALF cannot fall within the defined term "Nursing Home" under coverage she has purchased.  Nor has Transamerica explained how awareness that one has not purchased separate ALF coverage imposes a duty of inquiry as to whether the insurer will deny that an ALF can fit the definition of a "Nursing Home."  "[W]hen a party discovered or should have discovered fraud is normally a question for the jury."  *Wheeler v. George*, 39 So. 3d 1061, 1082 (Ala. 2009).  Transamerica has failed to place this case outside the norm.

In summary, Transamerica is entitled to summary judgment as to the first three alleged forms of suppression but not the fourth.

## V.  Negligence.

The complaint alleges negligence in the "sale and administration" of the Policy.  (Doc. 1, Exhibit B at 11).  The plaintiff has abandoned the negligent administration claim.  (Doc. 75 at 29).

As to negligence in the sale of the Policy, Transamerica invokes the two-year limitations period of Ala. Code § 6-2-38.  (Doc. 49 at 28-29).  The plaintiff responds that the claim is timely under the discovery rule applicable to fraud claims.  (Doc. 75 at 29).

The discovery rule of Section 6-2-3 "does not operate to postpone the running of the limitations period for nonfraud claims."  *Booker v. United American Insurance Co.*,

700 So. 2d 1333, 1339 (Ala. 1997).  The only question, then, is when the plaintiff's negligence claim accrued.  *Id*.[21]

"A negligence cause of action accrues as soon as the plaintiff is entitled to maintain the action, i.e., at the time of the first legal injury, regardless of whether the full amount of damages is apparent."  *Long v. Jefferson County*, 623 So. 2d 1130, 1137 (Ala. 1993).  When a plaintiff alleges that an insurance agent's negligence caused her to give up an old insurance policy in favor of a new one, legal injury occurs and the cause of action accrues at that time.  *Booker*, 700 So. 2d at 1340.  The complaint alleges that, due to Farmer's conduct, the plaintiff canceled her existing policy and purchased the Policy. (Doc. 1, Exhibit B at 5).  The plaintiff therefore suffered legal injury in 1992, and her negligence claim accrued at that time.  The claim is thus time-barred, and Transamerica is entitled to summary judgment as to this claim.

## VI.  Negligent Employment.

These torts depend on underlying wrongful conduct by Farmer.  *E.g., University Federal Credit Union v. Grayson*, 878 So. 2d 280, 291 (Ala. 2003).  The wrongful conduct alleged against Farmer consists of misrepresentations, suppression and negligence.  (Doc. 1, Exhibit B at 9-11).  According to the complaint, all this conduct occurred in 1992.

Count VI is governed by the two-year limitations period of Section 6-2-38.  *E.g., Mardis v. Robbins Tire & Rubber Co.*, 669 So. 2d 885, 887, 888 (Ala. 1995). Transamerica argues the claim is time-barred under this rule, since Farmer's conduct occurred in 1992.  (Doc. 49 at 30).  The plaintiff again invokes Section 6-2-3.  (Doc. 75 at 29).

In *Life Insurance Co. of Georgia v. Smith*, 719 So. 2d 797 (Ala. 1998), the plaintiffs sued the insurance agent for fraud and the insurer for negligent hiring, training

---

[21] "The very basic and long settled rule of construction of our courts is that a statute of limitations begins to run in favor of the party liable from the time the cause of action accrues." *Wheeler v. George*, 39 So. 2d 1061, 1084 (Ala. 2009) (internal quotes omitted).

and supervision.  *Id*. at 800.  Even though the agent's underlying tort was one of fraud, as to which the limitations period was tolled, the Court concluded that, under *Booker*, the negligent employment claims would accrue, and the limitations period begin to run, at the time they signed policy applications and began making payments.  *Id*. at 802.[22]  Thus, under *Smith*, the limitations period on a negligent employment claim begins to run at the time of the agent's fraud (if there is then legal injury), even though the limitations period on the underlying fraud claim may be delayed.

The plaintiff's negligent employment claims accrued in 1992, and the limitations period expired in 1994.  Transamerica is thus entitled to summary judgment as to these claims.

## VII.  Unjust Enrichment.

While nominally seeking summary judgment as to "all claims," (Doc. 49 at 1), Transamerica does not address the unjust enrichment claim.  It therefore survives Transamerica's motion.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion for partial summary judgment is **denied**.  Transamerica's motion for summary judgment is **granted** with respect to:  (1) the normal bad faith aspect of Count II; (2) the entirety of  Count III; (3)

---

[22] The Court nevertheless ruled that the negligent employment torts were not time-barred, because the insurer continued to negligently supervise the agent thereafter.  719 So. 2d at 802-03.  The plaintiff here does not allege that Transamerica continued to negligently supervise Farmer after 1992.

Although the *Smith* case saw eight Justices split six ways, 719 So. 2d at 812, this portion of the opinion garnered the support of at least five of them.  *Id*. (four Justices joined the plurality opinion); *id*. at 812-13 (Justice Houston joined this portion of the plurality opinion).

the first three listed suppressions of Count IV; (4) the entirety of Count V; and (5) the entirety of Count VI.  Transamerica's motion is **denied** in all other respects.[23]

DONE and ORDERED this 3rd day of January, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[23] Transamerica has filed objections to certain of the plaintiff's summary judgment exhibits and has moved to strike two of them.  (Doc. 85). Because the Court has not relied on these documents, the objections and motion to strike are **denied as moot**.  However, consideration of these exhibits would not and could not alter the Court's rulings on the motions for summary judgment.